## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| DEBRA L. BOLLER, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-01001-SDJ- |
| | § | CAN |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Debra L. Boller brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

### I.      PROCEDURAL HISTORY OF THE CASE

On February 28, 2019, Plaintiff Debra L. Boller ("Plaintiff") protectively filed an application for disability insurance benefits under Title II ("Title II") of the Social Security Act [TR 31, 208]. Plaintiff alleged an onset of disability date of August 1, 2017 [TR 31, 239]. On September 5, 2019, the claim was initially denied [TR 97], and again upon reconsideration on May 4, 2020 [TR 111]. Plaintiff requested an administrative hearing ("Hearing") [TR 134-136], which was held March 24, 2021, before an Administrative Law Judge ("ALJ") [TR 49-80]. At Hearing, Plaintiff and a vocational expert ("VE") testified; Plaintiff was represented by counsel [TR 49-80].

On April 27, 2021, the ALJ issued an unfavorable decision [TR 28-48]. After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 31-43]:[1] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date [TR 34]. At step two, the ALJ found Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees status-post left total knee replacement; degenerative disc disease of the lumbar, thoracic, and cervical spine; osteoarthritis of the bilateral hip status-post left hip replacement; osteoarthritis of the right shoulder; right shoulder rotator cuff tear status-post repair; and obesity [TR 34]. Relevant to the issues on appeal, at this step, the ALJ additionally concluded, "[t]he claimant's medically determinable mental impairments of anxiety, depression, and PTSD (posttraumatic stress disorder), considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe" [TR 34]. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) [TR 36]. At step four, the ALJ determined Plaintiff had the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel,

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id.* § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

crouch, and crawl. She can occasionally reach overhead with the right upper extremity. She can tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, atmospheric conditions, and hazards such as high exposed places and moving mechanical parts. She can perform jobs with no more than a *moderate* noise intensity level, as that term is defined by the Selected Characteristics of Occupations (SCO).

[TR 37]. Continuing the step four analysis, the ALJ found Plaintiff was capable of performing past relevant work as an office manager [TR 42]. Thus, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act, at any time from August 1, 2017, the alleged onset date, through April 27, 2021, the date of this decision [TR 43].

On May 28, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 204-207]. The Appeals Council denied Plaintiff's request on August 25, 2021, making the decision of the ALJ the final decision of the Commissioner [TR 22-25]. On December 27, 2021, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed her Opening Brief on April 25, 2022 [Dkt. 9], the Commissioner filed its Brief on June 24, 2022 [Dkt. 11], and Plaintiff filed her Reply Brief on July 5, 2022 [Dkt. 13].

## II.     STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on August 17, 1958, making her fifty-eight (58) years of age on the alleged onset date [TR 57, 85]. She was considered an individual of "advanced age," until her sixtieth (60) birthday on August 17, 2018, when she became a person "closely approaching retirement age" for the remainder of her claim. *See* 20 C.F.R. § 404.1563. Plaintiff has an associate degree [TR 239] and has past work experience as an office manager and medical assistant [TR 77, 240].

### 2. *Relevant Medical Records Before the ALJ*

To reiterate, the ALJ found Plaintiff had the severe impairments of osteoarthritis of the bilateral knees status-post left total knee replacement; degenerative disc disease of the lumbar, thoracic, and cervical spine; osteoarthritis of the bilateral hip status-post left hip replacement; osteoarthritis of the right shoulder; right shoulder rotator cuff tear status-post repair [TR 34]. He found the following mental impairments non-severe: anxiety, depression, and PTSD [TR 34]. Plaintiff's appeal, as it relates to the merits of the ALJ's decision, are solely focused on her mental impairments. Relevant to Plaintiff's alleged mental impairments and the substantial evidence argument raised by Plaintiff are the medical opinions and evaluations from Dr. Jonathan Marcotte, Psy.D ("Dr. Marcotte"), and the State Agency Medical Consultants ("SAMCs")

### *Dr. Marcotte*

Dr. Marcotte completed a psychological evaluation report on July 16, 2019 [TR 500-504]. He diagnosed her with PTSD and depression [TR 500]. In his overall summary, he provided, "[b]ased on the current evaluation, the claimant appears to be able to perform some work-related activities, such as the ability to: Carry out simple instructions. Interact appropriately with the public. Interact appropriately with co-workers and supervisors" [TR 500]. He stated that "[g]iven the current mood and medical difficulties, the claimant can be expected to have difficulty with regulating her anxiety in the midst of work-related stressors" [TR 500]. Under "behavioral health history," Marcotte noted, "[t]he claimant has seen therapists on and off from 1973 (age 16) until her daughter passed in 2007. She reportedly attended groups for mothers who have lost their children. She has never been hospitalized for psychiatric reasons. She denied any history of suicidality or self-harm" [TR 501]. As to "mental status and overall impressions," Marcotte explained,

<u>MENTAL STATUS AND OVERALL IMPRESSIONS:</u>

*Orientation:* The claimant was oriented to time, place, person, and purpose of the evaluation.

*Attention:* The claimant showed semi-adequate attention as evidenced by tangential speech and an ability to focus on questions and topics. The claimant was able to spell the word "WORLD" forwards and was able to spell the word "WORLD" backwards. Furthermore, the claimant was able to remember and repeat back a list of numbers in forward order but not in reverse order.

*Memory:* Immediate memory was intact. Delayed recall was not intact as evidenced by the inaccurate recall of a short list of words after a brief interval. The claimant could remember a general timeframe for major life events.

*Fund of Knowledge, Verbal Ability, and Academic Skill:* The claimant demonstrated having a basic fund of information that is incongruent with the level of education. She noted that she had a harder time focusing on questions after she discussed her experiences with her father and daughter. The claimant responded incorrectly to most general information questions. Overall, vocabulary and verbal ability were average. Although intelligence was not formally assessed, the claimant's IQ was determined, by informal measures, to be in the average range.

*Gross and Fine-Motor Skill:* The claimant used a cane to help her walk. Her left leg was recovering from knee-replacement surgery in May 2019.
*Visuospatial Ability:* Within normal limits.

*Insight and Judgment:* The claimant had adequate insight into current struggles and difficulties. The claimant had poor insight into abstract and metaphorical concepts (e.g. the meaning of common proverbs and sayings). Responses during the interview reflected poor judgment as evidenced by how the claimant would act in various situations involving safety concerns and good reasoning.

*Presentation and Observations:* The claimant's husband dropped her off at this disability assessment. She was dressed in black pants, a black blouse, and black shoes. She used a cane to help with mobility. She was 5'2, 190 lbs, and had hazel eyes and dark brown hair. Speech was clear and concise. Thought processes were tangential but logical. Notably, she had remarkable difficulties staying on topic and would provide excessive details about her experiences. Furthermore, she became upset when this examiner redirected her back to the assessment questions as a result of time constraints. This examiner processed her reactions and his goals for the assessment, which she responded well to. There was no evidence of thought disorders or hallucinatory experiences.

[TR 502-503].  Lastly, Marcotte opined that with treatment Plaintiff had a fair to good prognosis

[TR 503].

*SAMCs*

At the initial level, Dr. Rebecca Brayman, M.D. assessed Plaintiff [TR 91-92]. Under the 'A' Criteria of the Listings, Brayman found that for 12.04-Depressive, Bipolar, and Related Disorders and for 12.06-Anxiety and Obsessive-Compulsive Disorders, Plaintiff had an impairment but "that does [it] does not precisely satisfy the diagnostic criteria above" [TR 91]. Under the 'B' Criteria of the Listings, for 12.06-Anxiety, Brayman found that Plaintiff had no limitations as to understanding, remembering, or applying information; however, she had mild limitations in the following areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself [TR 91]. Brayman found no evidence of 'C' Criteria [TR 91]. Brayman concluded that "records show no more than mild mental health symptoms" [TR 91]. Dr. Lee Branham, Ph.D. evaluated Plaintiff at the reconsideration level and had identical findings [TR 105-106].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393.  "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above.  20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff urges remand is appropriate on four distinct grounds: (1) because the ALJ failed to include the mental limitations she found credible in the RFC finding or explain their omission; (2) because the ALJ failed to include in the RFC finding limitations established by the medical opinion of Marcotte which she found persuasive; (3) because the ALJ derived power from a single agency commissioner in violation of the Separation of Powers clause and the constitution; and (4) because the ALJ and the Appeals Council Judges had no legal authority to adjudicate this case as they were not properly appointed [Dkt. 9 at 1].   The Court first addresses Plaintiff's constitutional challenges.

### *Plaintiff's Constitutional Challenge(s) Does Not Warrant Remand*

Plaintiff articulates her first constitutional challenge as follows: "the appointment of Andrew Saul as a single commissioner of SSA who was removable only for cause and would serve a longer term than that of the President violated separation of powers.  Accordingly, the decision in this case by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, is constitutionally defective." [Dkt. 9 at 12].   Stated more simply, Plaintiff challenges the constitutionality of the authority of the ALJ, the Appeals Council, and the Commissioner of Social Security to determine Plaintiff's disability claim on the grounds that the statute governing appointment of the Commissioner limits the removal authority of the President, thereby violating the separation-of-powers [Dkt. 9 at 12].   Plaintiff urges the appointment statute for the

Commissioner, 42 U.S.C. § 902(a)(3) is unconstitutional under the Supreme Court's precedents in *Seila Law LLC v. CFRB*, 140 S.Ct. 2183 (2020), a fact "the Biden Administration apparently recognizes…as it fired Mr. Saul under the authority of <u>Seila Law</u>" [Dkt. 9 at 12-14].   Plaintiff further advances, in her second constitutional challenge, that the ALJ and Appeals Council Judges lacked any authority to decide Plaintiff's claim because they were appointed by a Commissioner who was him or herself appointed under an "unconstitutional statutory provision," citing *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018) [Dkt. 9 at 14-15].   Plaintiff asserts the only appropriate remedy is a "new hearing before a properly appointed official" [Dkt. 9 at 15].

In response, the Commissioner agrees that § 902(a)(3) violates the separation-of-powers "to the extent it is construed as limiting the President's authority to remove the Commissioner [of Social Security" without cause [Dkt. 11 at 18].   But without more, the Commissioner asserts Plaintiff's constitutional challenge nonetheless fails because Plaintiff cannot show the restriction caused Plaintiff harm [Dkt. 11 at 18-20].   The Commissioner, relying on *Collins v. Yellen*, 141 S. Ct. 1761 (2021), raises two arguments in support of this contention: (1) the ALJ was validly appointed and her determination of Plaintiff's claim authorized because Judge Humphrey's appointment was ratified by Acting Commissioner Berryhill (who was validly serving as Acting Commissioner and not subject to § 902(a)(3)'s unconstitutional removal restrictions); and (2) even if the ALJ and the Commissioner were appointed under statutes with unconstitutional removal provisions, no remand is warranted where Plaintiff fails to show denial of her disability claim was caused by the unconstitutional removal provision (or stated differently, that no nexus exists between the removal restriction and denial of Plaintiff's benefits claim) [Dkt. 11 at 5, 18].[2]

---

[2] The Commissioner also urges other remedial doctrines prevent the Court from granting Plaintiff the relief sought, including the harmless error doctrine, the *de facto* officer doctrine, the Rule of Necessity, and other important prudential considerations [Dkt. 11 at 23-24].

By way of background, in *Seila*, the Supreme Court concluded that the statutory restriction on the President's authority to remove the Director of the Consumer Financial Protection Bureau ("CFPB") was unconstitutional because it violated separation-of-powers principles by preventing the President from removing the CFPB Director at will. *Seila Law*, 140 S. Ct. at 2183. In *Collins*, the Court similarly found the removal limitation on the Director of the Federal Housing Finance Agency ("FHFA") unconstitutional. *Collins v. Yellen*, 141 S. Ct. 1761 (2021). In the wake of these decisions, the Office of Legal Counsel ("OLC") for the Department of Justice issued a memorandum "conclud[ing] that the President may remove the SSA Commissioner at will" and further "that disregarding the constitutionally unenforceable restriction on removal in 42 U.S.C. § 902(a)(3) would not affect the validity of the remainder of the statute." *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542, at *11 (Op. O.L.C. July 8, 2021). The OLC explained,

> Although under *Collins* and *Seila Law* the restriction on removal in 42 U.S.C. § 902(a)(3) is unconstitutional, and thus unenforceable, that conclusion does not affect the validity of the remainder of the statute, including the default term length and succession provisions for the Commissioner. . . . We think it clear that the SSA Commissioner's removal protection is severable from the remainder of the SSA organic statute, just as the Court in *Seila Law* determined that the removal protection provision for the CFPB Director was severable from the remainder of the Dodd-Frank Act.

*Id.* at *10. Consistent with the guidance from the OLC, numerous courts have subsequently determined that § 902(a)(3)'s removal provision is both unconstitutional and severable from the remainder of the statute. As one court recently explained:

> The removal provision violates separation of powers principles. For the purpose of the constitutional analysis, the Commissioner of Social Security is indistinguishable from the Director of the FHFA discussed in Collins and the Director of the CFPB discussed in *Seila Law*. As the Office of Legal Counsel emphasized, several features of the Social Security Administration—"a single Commissioner whose term extends longer than the President's, the immense scope of the agency's programs, the Commissioner's broad power to affect beneficiaries

and the public fisc, and the [agency's] largely unparalleled structure"—compel the conclusion that the removal provision is unconstitutional. *Id.* at *7.

But the removal provision is severable from the remainder of the statute. "[O]ne provision of a [statute] may be invalid by reason of its not conforming to the Constitution, while all the other provisions may be subject to no constitutional infirmity."

*Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) (quoting *Seila Law*, 140 S. Ct. at 2208). Indeed, severability is presumed where, as here, "[t]he remaining provisions of the Act are capable of fully independent function, and nothing in the text, structure, or history of the statute makes it 'evident' that Congress would have preferred, as an alternative to a Commissioner who is removable at will, no Social Security Administration at all." *Id.*

However, relevant to Plaintiff's constitutional challenge herein, the *Kaufman* court, citing the standard outlined in *Collins* and in the specific context of a social security disability case, further explained that in addition to demonstrating a violation of the separation of powers:

A party challenging an agency's past actions must [] show how the unconstitutional removal provision actually harmed the party—for example, if the President would have removed the agency's head but for the provision or, alternatively, if the agency's head "might have altered his behavior in a way that would have benefited" the party. Claimant therefore must "demonstrat[e] that the unconstitutional provision actually caused [her] harm." "Absent a showing of harm, we refuse to unwind the decision[ ] below."

Claimant has presented neither evidence nor a plausible theory to show that the removal provision caused her any harm. Claimant does not assert, for example, that the President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority. Nothing in the record suggests any link whatsoever between the removal provision and Claimant's case.

During oral argument, Claimant asserted that the unconstitutional removal provision affected the "expected value" of Claimant's claim because the Commissioner theoretically could act in more ways than he could have without the removal restriction. That argument is not particularized to Claimant; if we agreed, then it would require us to undo all disability decisions made by the Social Security Administration while the removal provision was operative. We reject the argument. As an initial matter, the reasoning is illogical. Even accepting the questionable

premise that the Commissioner might act differently with respect to an individual claimant, the Commissioner just as readily might act in a claimant's favor as in a claimant's disfavor. So, without some evidence of how the Commissioner was inclined to exercise expanded authority with respect to the particular claimant, we fail to see how even the theoretical "expected value" of Claimant's case would change. In any event, the argument rests solely on speculation that the Commissioner theoretically might have acted differently. Claimant cannot meet her burden of showing actual harm with speculation alone.

**In sum, we hold that the removal provision in 42 U.S.C. § 902(a)(3) violates separation of powers; that the provision is severable; and that, unless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case.** Because Claimant has not shown actual harm, we uphold the Commissioner's decision.

*Id.* at 849-50 (internal citations omitted) (emphasis added); *Solorio v. Comm'r*, No. CV-21-00582, 2022 WL 4545751, at *6 (D. Ariz. Sept. 29, 2022) ("Plaintiff needed to show how the unconstitutional removal provision personally and adversely affected her claim."); *Ghakarhi B. v. Comm'r*, No. 1:21-cv-01382, 2022 WL 4397529, at *7 (N.D. Ga. Sept. 22, 2022), (holding that the claimant must show how the unconstitutional provision "harmed" his DIB adjudication and outcome); *Rumple v. Comm'r*, No. 5:21-cv-00086, 2022 WL 4389715, at *3 (W.D.N.C. Sept. 22, 2022) (same); *Cheryl T. v. Kijakazi*, No. 20C6960, 2022 WL 3716080, at *4 (N.D. Ill. Aug. 29, 2022) (same); *Chad M. v. Kijakazi*, No. 3:21-cv-00268; 2022 WL 2914721, at *9 (D. Alaska July 25, 2022) (same); *Smith v. Kijakazi*, No. 7:21-cv-5, 2022 WL 2718965, at *9 (E.D. Ky. July 13, 2022) (same); *De Leon v. Kijakazi*, No. 21-508, 2022 WL 2355453, at *10 (D.N.M. June 30, 2022) (same); *Bryan C. v. Kijakazi*, No. 6:21-cv-00136, 2022 WL 2303792, at *3 (D. Or. June 27, 2022) (same); *Green v. Kijakazi*, No. 21-C-678, 2022 WL 1644936, at *25 (E.D. Wis. May 23, 2022) (same); *Rupert B. Kijakazi*, No. 21-76-M-DWM, 2022 WL 1468386, at *4 (D. Mont. May 10, 2022) (same). Following this reasoning, remand based on separation-of-powers challenges to the Commissioner's removal limitation has repeatedly been denied at the district court level, including this one; an unconstitutional removal provision does not automatically void every action of the

agency, and to undo the agency action, a plaintiff must show the constitutional provision inflicted harm. *See Halter o/b/o Halter v. Comm'r*, No. 4:21-cv-00262, 2022 WL 7353200, at *10 (E.D. Tex. July 7, 2022) (dismissing plaintiff's removal argument because "Plaintiff has not shown any such particularized harm"), *report and recommendation adopted*, No. 4:21-cv-262, 2022 WL 4587845 (E.D. Tex. Sept. 29, 2022); *Pamela Joyce B. v. Kijakazi*, No. 1:21-cv-00087, 2022 WL 3161941, at *9 (N.D. Tex. July 21, 2022) ("To prove the agency action is invalid, Plaintiff must show that the provision itself 'inflicted compensable harm.'"), *report and recommendation adopted*, No. 1:21-cv-00087, 2022 WL 3159273 (N.D. Tex. Aug. 8, 2022); *Taylor v . Comm'r*, No 4:21-cv-107, 2022 WL 3006784, at *4 (N.D. Tex. July 12, 2022) ("Absent a nexus between the unlawful removal statute of the SSA Commissioner, the ALJ's appointment and subsequent denial of Taylor's benefits, the Court finds that remand is not required on this issue.*"), report and recommendation adopted*, No. 21-cv-107, 2022 WL 2992877 (N.D. Tex. July 27, 2022); *Tibbetts v. Comm'r*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *5-6 (M.D. Fla. Dec. 21, 2021) ("assuming arguendo that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable"), *report and recommendation adopted*, No. 2:20-CV-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Hughes v. Kijakazi,* No. 20-2374, 2022 WL 1256704, at *21 (E.D. La. Mar. 9, 2022) ("To obtain relief, Mr. Hughes cannot rely on the removal provision alone: he must show that the removal provision harmed him. The fact that an ALJ or the Appeals Council received their authority from the Commissioner is not enough."), *report and recommendation adopted*, No. 20-2374, 2022 WL 1238628 (E.D. La. Apr. 26, 2022); *Hernandez v. Comm'r*, No. CV-20-02070, 2022 WL 2286801, at *4 (D. Ariz. June 24, 2022) ("For Plaintiff to be entitled to relief under the test outlined in *Collins* and adopted in the social security context by the Ninth Circuit in *Kaufmann*, Plaintiff must

show that her harm, in this case her unfavorable decision, was tied to the unconstitutional removal provision."). Plaintiff has not shown any such particularized harm. "The injur[y] [P]laintiff asserts here – essentially, that he was subjected to a constitutionally invalid adjudicative process – would apply to every claimant and cannot support a remand order in a specific case." *Green*, 2022 WL 1644936, at *24-25.

Plaintiff's constitutional argument fails for an additional reason. Judge Humphrey was not improperly appointed when Plaintiff's case was heard; the ALJ's appointment was ratified by the Acting Commissioner, who was removable at will and not subject to § 902(a)(3)'s unconstitutional removal restrictions. Consider, in *Lucia*, the Supreme Court held that administrative law judges for the Securities and Exchange Commission ("SEC") are "Officers of the United States," and, therefore, are subject to the Appointments Clause. 138 S. Ct. at 2055. The Court reversed and remanded the decision of a SEC ALJ on the grounds that they were appointed in violation of the Appointments Clause. *See id.* Shortly after *Lucia*, on July 16, 2018, Acting Commissioner Berryhill ratified all appointments of the then-serving ALJs, approving the appointments as her own and curing any potential *Lucia* challenge based on their initial appointment by an inferior officer other than the Commissioner. *See* Social Security Ruling 19-1p, *Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council*, 84 Fed. Reg. 9582, 2019 WL 1202036 (Mar. 15, 2019). On March 15, 2019, the Commissioner issued a ruling addressing Appointments Clause challenges to ALJ determinations based on *Lucia* by publishing Social Security Ruling 19-1p ("SSR 19-1p"). *See id.* at 9583. Importantly, SSR 19-1p provides notice that the Acting Commissioner, acting consistent with "guidance from the Department of Justice," ratified the ALJ appointments to "address any Appointments Clause questions involving Social Security claims" in the wake of *Lucia*. *Id.* The

Acting Commissioner took the same actions with respect to the administrative appeals judges who work at the Appeals Council. *Id.* Because Judge Humphrey's appointment was ratified by Acting Commissioner Berryhill on July 16, 2018, the ALJ was properly appointed when conducting Plaintiff's hearing on March 24, 2021, and when the disability determination issued on April 27, 2021 [TR 43; 49]. *See Hadash v. Comm'r*, No. 4:21-cv-461, 2022 WL 42393358, at *4 (N.D. Tex. Aug. 30, 2022) (finding Acting Commissioner Berryhill's ratification of appointments in July 2018 properly appointed the ALJ to adjudicate the case), *report and recommendation adopted*, No. 4:21-cv-461, 2022 WL 4240886 (N.D. Tex. Sept. 12, 2022); *see also Cooley v. Social Security Admin.*, No. 21-840, 2022 WL 1043693, at *7 (E.D. La. Feb. 4, 2022) ("The ALJ who adjudicated Plaintiff's claim on September 11, 2020 held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Nancy Berryhill, who had been designated to serve as Acting Commissioner in April 2018 on former President Trump's nomination of Andrew Saul to serve as Commissioner."), *report and recommendation adopted*, No. 21-840, 2022 WL 1027144 (E.D. La. Apr. 6, 2022); *see also Marrs v. Comm'r,* No. 4:20-CV-00822-BP, 2021 WL 4552254, at *4 (N.D. Tex. Oct. 5, 2021) ("Because the Commissioner ratified ALJ Phillips's appointment on July 16, 2018, and Phillips first heard Marrs's claim on August 23, 2018 and later on November 25, 2019 following remand from the AC, he was constitutionally appointed when he heard her case.").

Plaintiff's briefing advances one further argument regarding Berryhill's authority to serve as Acting Commissioner that the Court takes time to specifically address; Plaintiff contends Commissioner Berryhill was not lawfully serving as the Acting Commissioner after November 16, 2017 (which was 210 days after she began serving as Acting Commissioner) and could not ratify the appointments on July 16, 2018, [Dkts. 9 at 14-15; 13 at 7]. The FVRA prescribes limits for acting service in 5 U.S.C. § 3346. "An acting official serving under the FVRA may serve no

longer than 210 days beginning on the date the vacancy occurs; or … once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." *Id.* § 3346(a)(1)-(2).  For vacancies existing during the first 60 days after a Presidential transition (as occurred in 2017), the 210-day period runs from the later of 90 days after inauguration or 90 days after the date of the vacancy. *Id.* § 3349a(b).  If a first nomination does not result in a confirmation, an acting official may serve for another 210 days, *id.* § 3346(b)(1), and during the pendency of a second nomination, *id.* § 3346(b)(2)(A). If the second nomination fails, then an acting official may serve for another 210 days. *Id.* § 3346(b)(2)(B).  The FVRA also provides an enforcement provision in 5 U.S.C. § 3348. "Unless" an acting official "is performing the functions and duties" of the vacant office "in accordance with sections 3345, 3346, and 3347," the "office shall remain vacant" and only the head of the agency may perform the non-delegable duties of the vacant office. *Id.* § 3348(b)(1)-(2).  Nancy Berryhill, then the Deputy Commissioner of Operations for SSA, was designated Acting Commissioner on January 21, 2017, and no party disputes she properly served as same until November 16, 2017, when the initial 210-day period for acting service expired.  On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of SSA. Upon submission of the nomination, Berryhill resumed her service as Acting Commissioner during the nomination's pendency, *see* 5 U.S.C. § 3346(a)(2), and served until Mr. Saul was sworn in as Commissioner. Plaintiff argues that because Commissioner Berryhill ratified appointment of the ALJs in July 2018—more than 210 days after she became acting commissioner—she no longer had any authority under the FVRA to make such appointments [Dkt. 9 at 15].  In support of this position, Plaintiff urges this Court to adopt the findings made in *Brian T.D. V. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022).  The court in *Brian T.D.* concluded that because the initial 210-day acting

service period lapsed before the submission of Saul's nomination in April 2018, Berryhill could not serve as acting commissioner during the pendency of his nomination and thus could not lawfully ratify and approve the appointments of SSA ALJs on her own.  580 F. Supp. 3d at 630. *Brian T.D.* is contrary to a significant weight of authority from district courts across the country that have found that § 3346(a)(2) "contains a 'spring back' provision that enabled Berryhill to resume her role as acting commissioner as of the date that Saul was nominated for Commissioner in April 2018." *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022); *see also Early v. Kijakazi*, No. 5:21-CV-00096-KDB, 2022 WL 2057467, at *3 (W.D.N.C. June 7, 2022); *Reuter v. Saul,* No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020), *report and recommendation adopted*, No. 19-cv-2053, 2020 WL 6161405, at *6 (N.D. Iowa Oct. 21, 2020); *Nw. Immigrant Rts. Proj. v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 57-58 (D.D.C. 2020) (although "far more than 210 days passed" after resignation of permanent official before submission of nomination, a "separate provision of the FVRA permits an acting official to serve 'from the date of' a first nomination for the vacant office and 'for the period that the nomination is pending in the Senate,'" such that acting official could "lawfully serv[e] as Acting Secretary" upon submission of nomination).  Considering this overwhelming support, the Court declines to follow *Brian T.D.*  Plaintiff's constitutional challenges do not support remand.

### The ALJ Properly Assessed Plaintiff's RFC

Turning to Plaintiff's arguments on the merits of the ALJ's decision, the RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  The RFC is the most a

claimant is able to do despite her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Castillo v. Kijakazi*, -- F. Supp. 3d --, 5-20-CV-01471-RBF, 2022 WL 1152878, at *4 (W.D. Tex. Apr. 18, 2022) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987)); *see also Henderson v. Saul*, No. 20-02045, 2021 WL 3508495, at *6 (E.D. La. July 13, 2021), ("When assessing the RFC, an ALJ must consider all medically determinable impairments, including those to be non-severe"), *report and recommendation adopted*, No. 20-2045, 2021 WL 3362933 (E.D. La. Aug. 3, 2021).[3] To be clear, however, while ALJs must consider the combined effect of both severe and non-severe limitations in their RFC analysis "the ALJ does not have to include those limitations in the RFC if there is insufficient evidence that they produce limiting effects." *Sistrunk v. Kijakazi*, No. 3:21-cv-413, 2022 WL 3045315, at *2 (S.D. Miss. Aug. 2, 2022); *see Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (the ALJ is not required to incorporate limitations in the RFC the ALJ finds unsupported by the record); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014) (same).

Plaintiff argues that the ALJ erred by failing to explain why mental limitations that he found credible in his psychiatric review technique ("PRT") analysis were not included in the RFC. When assessing a claimant's mental capacity impairments at step three, the ALJ must conduct a PRT to rate the degree of functional limitations; the ability to understand, remember or apply

---

[3] An impairment is not severe "if you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." Id.

information; interact with others; concentrate, persist, or maintain pace; and manage oneself.  20 C.F.R. § 416.920a(c)(3).  In this case, Plaintiff alleged she had the mental impairments of anxiety, depression, and PTSD, each of which the ALJ concluded was non-severe [TR 34].  The PRT indicated that the Plaintiff had no limitation in the area of understanding, remembering, or applying information; and she had mild limitations in the remaining three functional areas—interacting with others; concentrating persisting, or maintaining pace; and adapting or managing oneself [TR 34-35].  Plaintiff relies on *Castillo* in furtherance of her argument regarding the ALJ''s failure related to her mental limitations.  In *Castillo*, the ALJ did not include any mental functional limitations in the RFC after finding the claimant's mental impairments were not severe; "[y]et absent from the ALJ's opinion is an explanation for why these mental limitations shouldn't be reflected in Castillo's [RFC]."  2022 WL 1152878, at *4.  The court remanded the case for this lack of explanation and further explained that "[t]he error here is not the ALJ's failure to include mental limitations in the [RFC] assessment. Rather, the error is the failure to consider whether mental functional limitations were warranted." *Id*.[4]  Plaintiff argues at length that this failure to explain warrants remanding the instant case.  However, unlike in *Castillo*, here the ALJ did in fact explain why she did not include mental limitations in the RFC. The ALJ's detailed his findings as follows,

> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. At her hearing, the claimant testified that she worked as an office manager immediately before the alleged onset date and was terminated because her position was eliminated. On a supplemental report, the claimant wrote that she cooked for herself daily and performed household chores (Exhibit B5E). The record medical evidence shows the claimant's recent and remote memory assessed as within normal limits, though she exhibited some deficits in delayed recall during a consultative psychological exam (Exhibits B6F, B16F). Non- examining State agency psychological consultants at the initial and reconsideration levels reviewed the record and assessed no limitation in this area

---

[4] Indeed, as both Parties admit, there is no requirement to include mental limitations in the RFC if the ALJ concludes that the claimant has mild limitations in the paragraph B evaluation. *See Stuckey v. Comm'r*, No. 21-200, 2022 WL 10758959, at *12 (M.D. La. Sept. 2, 2022), *report and recommendation adopted*, No. 21-00200, 2022 WL 4534963 (M.D. La. Sept. 28, 2022).

(Exhibit B2A, B4A). After thoroughly reviewing the record medical and other evidence, including the foregoing, the undersigned finds support for no limitation in this area.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant testified that she moved to Texas to live with her son and daughter-in-law, and she indicated that she has a good relationship with both of them. On her supplemental report, she denied going out and visiting others, but noted that she would engage in social activities occasionally. She wrote that she would go shopping and to medical appointments but wrote that she relied on her husband for transportation (Exhibit B5E). The record medical evidence describes the claimant as pleasant, cooperative, and appropriate with medical staff and peers (Exhibits B6F, B12F, B14F, B16F, B18F). Non-examining State agency psychological consultants at the initial and reconsideration levels reviewed the record and assessed no more than mild limitation in this area (Exhibit B2A, B4A). After thoroughly reviewing the record medical and other evidence, including the foregoing, the undersigned finds support for no more than mild limitation in this area.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant testified that she worked as an office manager immediately before the alleged onset date and was terminated because her position was eliminated. On her supplemental report, she wrote that she would watch television and movies for half-an-hour to three hours at a time (Exhibit B5E). Treatment notes give little indication of any difficulties related to this area, with one clinician noting the claimant's attention was normal (Exhibit B14F). The examining psychological consultant described the claimant's attention as semi-adequate as evidenced by tangential speech and ability to focus on questions and topics. The claimant was able to spell the word *world* forwards and backwards (Exhibit B6F). Non- examining State agency psychological consultants at the initial and reconsideration levels reviewed the record and assessed no more than mild limitation in this area (Exhibit B2A, B4A). After thoroughly reviewing the record medical and other evidence, including the foregoing, the undersigned finds support for no more than mild limitation in this area.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant testified that she moved to Texas to live with her son and daughter-in- law. She stated that she continues to take psychotropic medications, which she finds helpful without side effects. On her supplemental report, she alleged only physical problems as limiting her ability to care for herself. She alleged experiencing anxiety, panic, and flashbacks, with anxiety reactions occurring from daily to weekly (Exhibit B5E). Clinicians often found the claimant exhibiting normal mood, affect, and behavior, though her judgment seemed variable (Exhibits B6F, B13F, B14F). Non-examining State agency psychological consultants at the initial and reconsideration levels reviewed the record and assessed no more than mild limitation in this area (Exhibit B2A,

B4A). After thoroughly reviewing the record medical and other evidence, including the foregoing, the undersigned finds support for no more than mild limitation in this area.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

[TR 34-36].

And the ALJ then discussed the PRT findings in the RFC analysis,

The non-examining State agency psychological consultants at the initial and reconsideration levels assessed no more than mild "paragraph B" criteria limitations, thereby concluding that the claimant's medically determinable mental impairments are not severe (Exhibits B2A, B4A). These opinions are persuasive, as they are adequately supported with these consultants' reviews of the record and their analyses and consistent with conservative mental health treatment, the type, dosage, effectiveness, and lack of side effects of medication, and the claimant's daily activities. Given the lack of much specialized mental health treatment, it is also noteworthy that these opinions are generally consistent with the opinion of the examining psychological consultant.

The examining psychological consultant opined that the claimant could perform all areas of mental functioning in spite of some abnormalities during the evaluation (Exhibit B6F). This opinion is persuasive, as it is supported by exam findings, consistent with the assessments of the non-examining State agency psychological consultants, the claimant's daily activities, and lack of abnormal findings on mental status and psychiatric exams in the longitudinal medical record.

[TR 41-42]. As demonstrated above, the ALJ explains why mental limitations are not included in the RFC, referencing that the evidence did not show abnormal findings on mental status and psychiatric exams, a lack of specialized mental health treatment, and the consistency of the medical opinions that despite the mild limitations the claimant could perform all areas of mental functioning. As the ALJ expressly noted, the SAMC's assessment of mild limitations, "indicates that there is no more than a minimal limitation in [the claimant's] ability to do basic work activities," 20 C.F.R. § 4040.1520a(d)(1). Thus, unlike in *Castillo*, where the ALJ singularly relied on the non-severity finding in his RFC assessment, the same did not occur here where the ALJ

relies on other medical evidence and dedicated multiple paragraphs in explaining his rationale. *See also Nichols o/b/o Nichols v. Kijakazi*, No. 3:20-cv-00470, 2022 WL 16548858, at *5 (S.D. Miss. March 29, 2022) (finding the ALJ did not commit error where the mild mental limitations were discussed in the RFC assessment but not included in the RFC); *see also Henderson,* 2021 WL 3508495, at *7 (finding the ALJ's RFC assessment providing no mental limitations was proper even though he found mild limitations under paragraph B, his discussion of the medical evidence at step four was sufficient because he "considered all of the medical evidence").

### *The ALJ Properly Considered the Medical Opinion Evidence*

Plaintiff's last point of error is regarding the ALJ's evaluation of Dr. Marcotte's medical opinion. Plaintiff argues that remand is required because the ALJ failed to include or account for in the RFC Dr. Marcotte's finding that Plaintiff should be limited to short and simple instructions [Dkt. 9 at 9]. More specifically, Plaintiff argues by finding Marcotte's opinion persuasive, the ALJ must either include each of the limitations found by Marcotte or explain their omission. Plaintiff is incorrect in this assertion.

As an initial matter, Dr. Marcotte found that "claimant appears to be able to perform some work-related activities, such as the ability to: carry out simple instructions" [TR 500]. There is no express finding, as Plaintiff seemingly advocates, that she lacked the ability to carry out more than simple instructions. Moreover, under the new regulations related to the weighing of medical opinions, the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources."); *see also* 20 C.F.R. § 404.1520b(c) (medical opinion evidence "is inherently neither valuable nor persuasive to the issue of whether [claimant is] disabled."). There is similarly no requirement that an ALJ must adopt a medical opinion in full*; Collins v.*

*Comm'r*, No. 4:20-cv-769, 2022 WL 4494122, at \*5 (E.D. Tex. Aug. 30, 2022*), report and recommendation adopted*, No. 4:20-cv-769, 2022 WL 4490143 (E.D. Tex. Sept. 27, 2022), or discuss each opinion contained in a medical opinion. *Lee v. Comm'r*, No. 4:21-cv-1390, 2022 WL 4490176, at \*4 (S.D. Tex. Sept. 27, 2022) ("The ALJ is not required to provide a point-by-point discussion of each and every medical opinion contained in a medical source statement from a given provider).[5] Rather, in weighing the medical opinions of record, under the current regulations, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. *Id.* § 404.1520c(a), (c)(1)-(5). Of these, supportability and consistency are the most important factors. *See Id.* §§ 404.1520(b)(2), 404.1520c(a).

Notably, the new rule changed the articulation requirements for how the ALJ considers each medical opinion. The new articulation requirements state:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate

---

[5] "Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other *evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source.*" *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, \*4 (W.D. La April 11, 2019). The inquiry for the Court is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); s*ee Perez v. Barnhar*t, 416 F.3d 457, 461 (5th Cir. 2005).

how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Id.* § 404.1520c(b)(1)-(2); *see Georgopoulos v. Comm'r*, No. 4:21-cv-00192, 2022 WL 3023247, at *8 (E.D. Tex. July 8, 2022), *report and recommendation adopted*, No. 4:21-cv-00192, 2022 WL 3018417 (E.D. Tex. July 29, 2022); *see Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (finding that the medical source regulations do not "require the ALJ to expressly address the persuasiveness of every opinion within every report").

Here, the ALJ adequately articulated her findings under the regulations; she clearly evaluated both the supportability and consistency of the opinions of Dr. Marcotte and the SAMCs.

> The non-examining State agency medical consultants at the initial and reconsideration levels assessed a residual functional capacity for light work with postural and environmental limitations (Exhibits B2A, B4A). These opinions are persuasive insomuch as consistent with the record medical evidence supporting that the claimant is capable of performing some work activity. However, further limiting the claimant to the sedentary level of exertion, as well as including an overhead reaching limitation, is more consistent with the nature of the claimant's severe shoulder, bilateral knee, and bilateral hip impairments, which limit, among other things, her lifting, carrying, standing, and walking abilities. Moreover, the greater restrictions of the above residual functional capacity assessment adequately consider factors that precipitate and aggravate the claimant's symptoms.
>
> The non-examining State agency psychological consultants at the initial and reconsideration levels assessed no more than mild "paragraph B" criteria limitations, thereby concluding that the claimant's medically determinable mental impairments are not severe (Exhibits B2A, B4A). These opinions are persuasive, as they are adequately supported with these consultants' reviews of the record and their analyses and consistent with conservative mental health treatment, the type, dosage, effectiveness, and lack of side effects of medication, and the claimant's daily activities. Given the lack of much specialized mental health treatment, it is also noteworthy that these opinions are generally consistent with the opinion of the examining psychological consultant.
>
> The examining psychological consultant opined that the claimant could perform all areas of mental functioning in spite of some abnormalities during the evaluation (Exhibit B6F). This opinion is persuasive, as it is supported by exam findings,

consistent with the assessments of the non-examining State agency psychological consultants, the claimant's daily activities, and lack of abnormal findings on mental status and psychiatric exams in the longitudinal medical record.

[TR 41-42].  Moreover, looking to the totality of the ALJ's opinion, shows the ALJ thoroughly considered the medical records and testimony, and the decision reflects those findings.  The ALJ did not err in weighing the medical evidence.  *See Dixie L.C. v. Kijakazi*, No. 3:21-cv-764, 2022 WL 45899164, at *3 (N.D. Tex. Sept. 29, 2022) ("The ALJ is specifically required to explain how he or she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required."); *see also Healer v. Saul*, SA-19-cv-01497, 2020 WL 7074418, at *10 (W.D. Tex. Dec. 3, 2020) ("The ALJ was not required to articulate his consideration of the other factors after finding the opinions of the State agency medical consultants to be more supported by and more consistent with the medical records and other objective evidence than the medical source statements of PA Watson and Dr. Clinton.").

## CONCLUSION AND RECOMMENDATION

Accordingly, the Court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of December, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE